NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0346n.06

Case No. 25-3723

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| JEFFREY I. BATTLE, | ) | |
|     Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SILER, DAVIS, and RITZ, Circuit Judges.

**SILER, Circuit Judge.** Defendant Jeffrey I. Battle challenges the procedural reasonableness of his sentence and claims ineffective assistance of counsel. We **AFFIRM**.

## I.     Background

In April 2024, an informant told investigators that Battle was distributing large quantities of drugs around Mahoning County, Ohio. After receiving this information, law enforcement began investigating Battle.

While surveilling a residence in Austintown, Ohio, investigators witnessed Battle arrive in a rental truck. Subsequently, on numerous occasions, the investigators watched Battle carry items to and from his rental truck and the residence. In August 2024, investigators saw Battle leave the Austintown residence, enter a rental truck, and then arrive at a clothing store. Battle exited the clothing store carrying an empty duffle bag.

Later that day, investigators watched Battle drive the rental truck to a truck stop parking lot. Battle parked next to a semitruck, and he carried a duffle bag from the semitruck to the rear

passenger seat of the rental truck. Another individual then loaded a second duffle bag into the same seat. Shortly thereafter, Battle departed.

Law enforcement subsequently attempted to conduct a traffic stop on Battle's rental truck. Battle pulled the rental truck to the right side of the roadway, but he continued moving down an exit ramp at around 15 miles per hour. When law enforcement pulled in front of the rental truck, Battle abruptly turned left. As he turned, Battle struck an officer's vehicle and fled, accelerating to 90 miles per hour. Law enforcement eventually found the rental truck abandoned in a residential area.

Upon searching the vehicle, law enforcement discovered two duffle bags containing methamphetamine. One of the duffle bags matched the one that investigators had observed Battle carrying earlier. Lab testing later confirmed that the duffle bags contained 36.9 kilograms of methamphetamine. Law enforcement searched the area around the abandoned rental truck, found Battle hiding, and arrested him.

Following this incident, the government filed a one-count indictment charging Battle with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Battle later pled guilty without a plea agreement to the charge.

Prior to sentencing, probation issued a presentence report (PSR), which applied the federal sentencing guidelines to calculate Battle's offense level and criminal history category. The PSR assigned Battle a base offense level of 38 because he possessed 4.5 kilograms or more of methamphetamine. The PSR then assigned an additional two levels for obstruction of justice because Battle struck a law enforcement vehicle and fled at high speeds. The PSR subtracted three levels for Battle's acceptance of responsibility, resulting in a total offense level of 37.

Because Battle was convicted of marijuana possession in December 2015, the PSR assigned Battle one criminal history point, which landed him in a criminal history category of I.

Battle objected to parts of the PSR. As relevant, he claimed that he was entitled to a "downward departure" from his criminal history category under USSG § 4A1.3 cmt. n.3(A)(ii) because his prior marijuana possession conviction did not involve an intent to sell or distribute the drug. As a result, he claimed that he qualified as zero-point offender under USSG § 4C1.1. He also contended that, in accordance with amendments to the sentencing guidelines adopted in April 2025, he was "simply a courier or mule" (as set forth in USSG § 2D1.1(e)(2)(B)(i)) and that he thus qualified for a mitigating role reduction[1] under USSG § 3B1.2.

Following the PSR, Battle filed a sentencing memorandum on his own behalf. He reiterated his prior objections to the PSR and argued that he participated only "minimally" in the drug trafficking operation and that he "never exceeded the lowest level of his organization's drug trafficking function."

At sentencing, Battle argued that he was entitled to "a downward departure for the defendant's Criminal History Category and . . . that he should be a zero-point offender and not a one-point." On this issue, the district court observed that § 4A1.3 cmt. n.3(A)(ii) did not permit

---

[1] The guidelines differentiate between minor participants and minimal participants with respect to mitigating role reductions. USSG § 3B1.2. In his objections to the PSR, Battle stated that he qualified as a "minor" participant rather than a "minimal" participant. Battle also requested a two-level reduction, which suggests he was arguing for a minor role reduction under § 3B1.2(b). But his reference to being a "courier" is an argument that he qualified as a minimal participant. *See* § 2D1.1(e)(2)(B)(i) stating that "[a]n adjustment under § 3B1.2(a) [the minimal participant reduction] is generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as serving as a courier"). Thus, it is unclear whether Battle argued for a minimal or minor participant reduction in his objections to the PSR.

this outcome because it "applies the departure to a defendant's Criminal History Category and Mr. Battle already falls into Criminal History Category I, so there's nothing to depart from."

Regarding the mitigating role reduction under § 3B1.2, the district court stated its belief that Battle was arguing for a reduction based on his alleged role as a "drug mule or courier." In response, Battle did not attempt to modify the court's understanding. The government contended that Battle was not "a simple [courier]" and that Battle had not "qualified for any kind of role reduction." Battle's counsel countered that Battle "was simply a mule."

On this issue, the district court stated that a mitigating role reduction "is generally warranted if the defendant's primary function is plainly among the lowest level of drug trafficking functions, such as serving as a courier." The district court observed that Battle was trafficking a large quantity of methamphetamine—an amount beyond typical "mule or courier quantities." And the court determined that he did not play the role of "a lookout or low level member of a drug conspiracy." The court noted that Battle had used commercial trucks to transport the drugs, and it rejected Battle's argument on this issue.

The court then credited a three-point deduction for Battle's acceptance of responsibility. Finally, the district court concluded that Battle's total offense level was 37 and that with a Criminal History Category of I, Battle had a sentencing range of 210 to 262 months.

Following the discussion of the sentencing guidelines, the district court heard argument and sentenced Battle to a prison term of 216 months and a term of supervised release of 10 years.

## II.     Discussion

### A.     The Marijuana Conviction

Battle argues that his conviction for possession of marijuana should not count toward his criminal history because marijuana possession is like the offenses enumerated in § 4A1.2(c)(1)

4

and (c)(2). In response, the government first contends that Battle's argument regarding § 4A1.2(c) is forfeited. And the government argues that the district court did not plainly err when it found that Battle's marijuana conviction should count.

If a defendant receives any criminal history points under USSG § 4A1.1(c), then that defendant cannot qualify as a zero-point offender under § 4C1.1(a). The reason is simple: to qualify as a zero-point offender, a defendant must meet certain criteria, including that "the defendant did not receive any criminal history points from Chapter Four, Part A." § 4C1.1(a)(1).

A defendant receives criminal history points for sentences resulting from felony convictions and certain misdemeanor convictions. USSG § 4A1.1(c). A misdemeanor sentence typically counts toward a defendant's criminal history, subject to two exceptions. USSG § 4A1.2(c). Under the first, § 4A1.2(c)(1), sentences for the enumerated offenses below are "counted only if" the sentence was either "a term of probation of more than one year or a term of imprisonment of at least thirty days" or "the prior offense was similar to an instant offense" for which the defendant is being sentenced:

> Careless or reckless driving
> Contempt of court
> Disorderly conduct or disturbing the peace
> Driving without a license or with a revoked or suspended license
> False information to a police officer
> Gambling
> Hindering or failure to obey a police officer
> Insufficient funds check
> Leaving the scene of an accident
> Non-support
> Prostitution
> Resisting arrest
> Trespassing.

USSG § 4A1.2(c)(1). Likewise, if a defendant's misdemeanor conviction is like one of the following offenses it is "never counted" toward the criminal history calculation:

> Fish and game violations
> Hitchhiking
> Juvenile status offenses and truancy
> Local ordinance violations (except those violations that are also violations under state criminal law)
> Loitering
> Minor traffic infractions (e.g., speeding)
> Public intoxication
> Vagrancy.

USSG § 4A1.2(c)(2). To determine whether an offense is "similar" to an offense in § 4A1.2(c)(1) and (c)(2), the court should use a "common sense approach." USSG § 4A1.2(c) cmt. n.12(A). That common sense approach "includes consideration of relevant factors" such as:

| (i) | a comparison of punishments imposed for the listed and unlisted offenses; |
| (ii) | the perceived seriousness of the offense as indicated by the level of punishment; |
| (iii) | the elements of the offense; |
| (iv) | the level of culpability involved; and |
| (v) | the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct. |

*Id.*

In the district court, Battle objected to the PSR, arguing that he was entitled to a "downward departure" for his criminal history category under § 4A1.3 cmt. n.3(A)(ii) and § 4C1.1(a) because he possessed marijuana without intent to sell or distribute it. Now, Battle argues that the district court should not have added a criminal history point for his marijuana conviction because it is like one of the offenses in § 4A1.2(c)(1) or § 4A1.2(c)(2). This is a challenge to the procedural reasonableness of his sentence, as it questions the court's application of the sentencing guidelines. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Ordinarily, we review challenges to the procedural reasonableness of a sentence for an abuse of discretion. *Id.* But because Battle did not

raise this objection below, we review this claim for plain error. *See United States v. Cooper*, No. 23-2058, 2025 WL 429915, at *2 (6th Cir. Feb. 7, 2025).

The problem with Battle's argument on this issue is straightforward: We have consistently held that a prior conviction for marijuana possession does not meet one of the exceptions contained in § 4A1.2(c). *See, e.g.*, *United States v. Stubblefield*, 265 F.3d 345, 347 (6th Cir. 2001); *United States v. Collins*, 600 F. App'x. 433, 435-37 (6th Cir. 2015); *United States v. Tatum*, 743 F. App'x 589, 594 (6th Cir. 2018). Because this issue is reviewed for plain error and because we have consistently held that marijuana possession is unlike the offenses in § 4A1.2(c), Battle cannot show that any error was "obvious or clear." *See Collins*, 600 F. App'x at 437 (citation modified); *Cooper*, 2025 WL 429915, at *2 (concluding the same).

Battle attempts to avoid this conclusion by acknowledging our past precedents and arguing that his case is different. Specifically, Battle notes that since our decision in *Tatum*, many states have legalized marijuana possession and that the state where Battle committed the possession offense (Arizona) is one of these. So, he contends that marijuana possession is no longer a serious offense and is *now* like the offenses listed in § 4A1.2(c). This argument ignores that, following *Tatum*, we have continued deciding this issue against the defendants raising them. *See Cooper*, 2025 WL 429915, at *2; *United States v. Solomon*, No. 23-3854, 2024 WL 3675603, at *3-4 (6th Cir. Aug. 6, 2024); *United States v. Malory,* No. 22-2110, 2023 WL 7550018, at *3-5 (6th Cir. Nov. 14, 2023). So, the assertion that the marijuana-legalization movement changes the analysis runs head-long into our continued adherence to *Stubblefield*, *Collins*, and *Tatum*.

## B. Mitigating Role Reduction

Battle argues that the district court erred by assessing whether Battle was a *minimal* participant when he had raised a claim that he was a *minor* participant in the drug trafficking

scheme. In response, the government argues that, although Battle initially argued that he was a minor participant, he later confined his argument to being a minimal participant in the drug trafficking scheme.

As relevant, § 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." USSG § 3B1.2 cmt. n.3(A). In particular, the defendant's offense level is decreased if the defendant is either a "minimal participant" in the criminal activity or a "minor participant" in the criminal activity. USSG § 3B1.2(a), (b).

A minimal participant reduction provides the biggest reduction and "is generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout." USSG § 2D1.1(e)(2)(B)(i). A minor participant reduction is appropriate if "the defendant's primary function in the offense was performing another low-level trafficking function, such as distributing controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit." USSG § 2D1.1(e)(2)(B)(ii). Finally, whether a minimal or minor participant adjustment is warranted turns on the totality of the circumstances. USSG § 3B1.2 cmt. n.3(C). And, in evaluating the circumstances, courts should consider "the following non-exhaustive list of factors":

(i)     the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)     the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)     the degree to which the defendant stood to benefit from the criminal activity.

*Id.*

Although Battle's initial arguments regarding the mitigating role reduction were unclear, Battle subsequently clarified in his sentencing memorandum and at sentencing that he was seeking a minimal participant reduction under § 3B1.2(a) rather than a minor participant reduction under § 3B1.2(b).

Accordingly, at sentencing, the district court stated its belief that Battle was arguing for a minimal participant reduction. The district court then recited the standard for a minimal participant reduction under § 2D1.1(e)(2)(B)(i)—that a mitigating role reduction "is generally warranted if the defendant's primary function is plainly among the lowest level of drug trafficking functions, such as serving as a courier." The court concluded that the minimal participant reduction did not apply because Battle was more than a courier. Because the district court applied the minimal participant standard to Battle's claim for a minimal participant reduction, it did not apply an incorrect standard.

Despite the above, Battle additionally contends that the district court erred because it failed to consider the totality of the circumstances in concluding that Battle was not entitled to a mitigating role reduction. In its analysis, the court focused on two points: the quantity of methamphetamine Battle was transporting and his use of commercial trucks to transport the drugs. It also noted that Battle was not a mere "lookout." Thus, the court gave consideration to "the nature and extent of the defendant's participation" in the drug trafficking operation under § 3B1.2 cmt. n.3(C)(iv). And, by referencing the use of commercial trucks, the court appeared to consider

"the degree to which the defendant understood the scope and structure of the criminal activity" and Battle's "planning or organizing" role within the drug trafficking operation under § 3B1.2 cmt. n.3(C)(i), (ii). In other words, the district court weighed the factors in § 3B1.2 cmt. n.3(C) and thus assessed the totality of the circumstances.

## C.     Ineffective Assistance of Counsel

Battle also urges that his counsel was ineffective for failing to argue that his conviction for marijuana possession is like the offenses in § 4A1.2(c). But we disfavor reviewing ineffective assistance of counsel claims on direct appeal because the record is typically inadequate to evaluate such claims. *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012) (citing *Massaro v. United States*, 538 U.S. 500, 504-05 (2003)). And here we find that the record is inadequate because nothing at the sentencing hearing related to why Battle's counsel made certain arguments, declined to raise others, or whether his counsel was ineffective. So, we decline to review this claim. Despite this, Battle may still raise his claim of ineffective assistance of counsel in a "proper post-conviction hearing." *United States v. Josic*, 324 F. App'x 472, 482 (6th Cir. 2009) (citing *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990)).

## III.     Conclusion

For the above reasons, we **AFFIRM** the judgment of the district court.